Mary Elizabeth Galvan
Wyoming State Bar No. 5-1879
Galvan & Fritzen, An Association of Sole Practitioners
410 East Grand Avenue, Suite 211
P. O. Box 1071
Laramie, Wyoming 82073-1071
(307) 745-7091
mgalvan@wyoming.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| RUBY ZIEGLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil Action No. _____ |
| STATE OF WYOMING DEPARTMENT | ) | |
| OF CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## COMPLAINT

_____

COMES NOW Ruby Ziegler, Plaintiff, by and through her attorney, Mary Elizabeth Galvan, and for her *Complaint* against the Defendant, states as follows:

1.      Plaintiff brings this action for declaratory relief, injunctive relief, compensatory damages, penalties, costs, and attorneys' fees in order to redress injuries done to her by the Defendant in violation of Title VII of the Civil Rights Act of 1964, as amended 1991, 42 U.S.C. §§ 2000-e, *et seq.* (hereinafter also referred to as "Title VII"; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.* (hereinafter also referred to as the "ADEA"); and the Americans with

Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* (hereinafter also referred to as the "ADA").

2.    Plaintiff seeks an order declaring Defendant's policies and practices which discriminate on the basis of race, sex, and religion or on the basis of age or disability status to be unlawful; enjoining Defendant from engaging in employment practices which discriminate on the basis of an individual's membership in a protected class or classes, and which retaliate against subordinate employees in the terms and conditions of their employment for engaging in lawful opposition to employment practices made unlawful under the laws of the United States of America; requiring Defendant to reinstate benefits to Plaintiff she would have received but for unlawful employment practices; requiring Defendant to compensate Plaintiff for damages suffered by her due to its unlawful and discriminatory actions; and requiring Defendant to pay Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of Plaintiff's Title VII, Age Discrimination in Employment and Americans with Disabilities claims and venue is proper in this Court. The acts complained of herein took place wholly within the State of Wyoming. Plaintiff was at the time the causes of action pled herein arose, a resident of Fremont County, Wyoming. Defendant is a governmental agency of the State of Wyoming whose principal office is in Cheyenne, Wyoming.

## PARTIES

4. At all relevant times herein, Plaintiff was a resident of Fremont County, Wyoming employed by Defendant as the Warden at the Wyoming Honor Farm in Riverton, Fremont County, Wyoming until her termination from employment on August 22, 2019.

5. Plaintiff is an aggrieved party as a member of protected classes under Title VII, the ADEA and the ADA. She is an African American Christian female over the age of 40; she has a cognizable disability under the ADA; and she engaged in protected opposition to Defendant's discriminatory policies and practices; and she was subjected to unlawful discrimination on the basis of her race, religion, sex, age and disability status, and retaliation for engaging in protected activity, which discrimination and retaliation include, without limitation, hostile work environment discrimination and wrongful termination.

6. Defendant Wyoming Department of Corrections (WDOC) is an agency of the State of Wyoming.

## ADMINISTRATIVE PROCEDURE

7. On December 12, 2019, Plaintiff filed a timely charge of discrimination with the Wyoming Department of Workforce Services and the United States Equal Employment Opportunity Commission.

8. On October 20, 2022, the United States Equal Employment Opportunity Commission issued a *Notice of Right to Sue* authorizing Plaintiff to file a private action in a court

of competent jurisdiction, which was received by Defendant on October 24, 2022. A true and correct copy of the *Notice of Right to Sue* is attached hereto as Exhibit 1.

9.    This action is timely filed within ninety (90) days of the issuance of the *Notice of Right to Sue*.

## FACTUAL ALLEGATIONS

10.    Plaintiff is an African American Christian female born on September 13, 1964, who has been medically diagnosed with occipital neuralgia, a cognizable disability under the ADA.

11.    Plaintiff was employed by the Wyoming Department of Corrections between January 3, 2006, until her wrongful termination on August 22, 2019.

12.    During her employment, Plaintiff was one of only two African American female employees of the WDOC.

13.    On September 15, 2016, Plaintiff was promoted to the position of Warden at the Wyoming Honor Farm, as Defendant's first African American female warden and second African American warden.

14.    At all relevant times herein, Plaintiff performed her duties competently and loyally, and without significant disciplinary action or negative performance evaluations until the actions complained of herein.

15.    At the time of her promotion, Plaintiff was subjected to differential treatment in the terms and conditions of her employment, including, without limitations, the conditions and qualifications of her promotion to Warden; the expectations of her position; and restrictions on her personal time  when she was not working to which

White male wardens, male wardens generally or similarly situated White male administrative employees were not restricted without a legitimate governmental or business reason for the differential treatment accorded her.

16. From the time Plaintiff assumed her position as Warden at the Wyoming Honor Farm until her termination, she was subjected to hostile working environment discrimination based on her race, sex, religion, age and disability, from her Associate Staff, other subordinate staff, including Corrections Officers and co-employees, which included, without limitation, open hostility and disrespect, and false allegations concerning her competency, attention to work, and work attendance, none of which could be factually substantiated, arising out of their resentment at having to work under an African American female, which hostile working environment was fostered by Plaintiff's supervisors..

17. The hostile working environment to which Plaintiff was subjected was real and pervasive; affected the terms and conditions of her employment; and was intentionally fostered as an attempt to fabricate cause for Plaintiff's discharge or otherwise force her involuntary resignation.

18. Respondent's administrators who supervised Plaintiff knew, or reasonably should have known, and would have known had they undertaken any semblance of an effective investigation into the discriminatory motivations underlying these allegations, responded to these unfounded allegations by subjecting Plaintiff to discriminatory monitoring and disciplinary action in furtherance of the hostile work environment to which she was subjected.

19. Plaintiff has been diagnosed with occipital neuralgia, a condition in which the occipital nerves are injured or inflamed and which may result in intermittent severe headaches. Because it affects the major life activities of concentrating, thinking, and communicating, and if severe, working occipital neuralgia is a cognizable disability as defined by the Americans with Disabilities Act, 42 U.S.C. § 12102(2)(A).

20. Defendant was on notice of Plaintiff's disability, which did not interfere with her carrying out the essential and non-essential duties of her position, and did not require any accommodation therefor, since 2011, when Plaintiff was first diagnosed, and knew that her disability had no impact on her performance.

21. In early 2018, a White female Corrections Officer serving at the rank of Captain under Plaintiff's supervision made a complaint that Plaintiff was "unsafe" at work because of her medical condition, to the Deputy Prisons Administrator who, on the basis of this unfounded allegation, prevented Plaintiff from the use of a state vehicle to attend a previously scheduled safety meeting, because she falsely regarded her as disabled without foundation.

22. When Plaintiff objected to the Deputy Prison Administrator's conclusion that she was unsafe to operate a state vehicle and attempted to explain that Defendant had been on notice of her disability since 2011, he responded with ridicule, accused her of being "contentious", and threatened to terminate her because of her occipital neuralgia.

23. On information and belief, White male and female wardens and similarly situated other administrative personnel are neither regarded as disabled because of disabilities

which do not affect their work, nor threatened with termination because of such disability or for objecting to discriminatory treatment on the basis of disabilities which had no impact on their job performance.

24. Immediately following this incident, the Deputy Prison Administrator engaged in a pattern of retaliation against Plaintiff, including, but not limited, subjecting her to discriminatory monitoring of her performance; an unsuccessful attempt to charge her operational budget to require her to fund an item for which her department was not responsible and threatening to "fire" her when she pointed this fact out; threatening to "tear" the door to her office "off its hinges"; and initiating a series of false complaints alleging discriminatory animus on Plaintiff's part.

25. May 5, 2018, the Deputy Prison Administrator issued an "Expectations of Communication" letter to Plaintiff, allegedly based on "recent complaints from Wyoming Honor Farm Staff" that she had made biblical references which made the staff "uncomfortable", which she was given to understand included saying "bless you" in response to a sneeze, and playing what a staff member interpreted as "religious music" in her office. White employees who made specific biblical references, discussed religious topics, or played religious music at the workplace were not similarly disciplined.

26. Defendant contracts for its medical services with Corizon Health, Inc. In 2019, its Health Services Administrator, a White female, was terminated from her employment, and advised Plaintiff that she believed that she had been terminated because a White male Corrections Officer under Plaintiff's supervision serving at the

7

rank of Captain had caused her termination because he was having an extramarital affair with the Corizon Health Inc. supervisor.

27. In her capacity as Warden, Plaintiff was charged with the responsibility and obligation of complying with and enforcing the State of Wyoming's employment policies, including its policies relating to discrimination and harassment.

28. Plaintiff reported the Corizon employee's complaint to the Deputy Prison Administrator and the Prison Operations Administrator, acknowledged that they were aware about the gossip concerning the Corrections Officer, and the Deputy Prison Administrator engaged in gossip and speculation concerning the relationship with Plaintiff, but neither otherwise commenced an investigation into the report or took remedial action.

29. Subsequently, as Warden and the Corrections Officer's supervisor, Plaintiff made a formal request for an investigation into the allegations. In response, the Deputy Prison Administrator actively prohibited Plaintiff from pursuing the investigation because it would "turn" her staff "against" her. Plaintiff was subsequently advised by the WDOC Human Resources Manager that the Corrections Officer had filed a hostile work environment charge against her.

30. The Deputy Prison Administrator subsequently acknowledged that the Corrections Officer's complaint against her was retaliatory, by apologizing to her and telling he regretted not allowing her to initiate the investigation into the Corrections Officer's conduct.

8

31.  Defendant neither investigated nor initiated an investigation into the allegations concerning the Corrections Officer, nor did it investigate the relationship between the officer's complaint against Plaintiff and her protected activity in reporting a suspected violation of the State of Wyoming Personnel Rules, or the role played by Deputy Prison Administrator and the Prison Operations Administrator in precluding an investigation.

32.  Although Defendant did not commence an investigation into Plaintiff's report concerning the officer, it did commence an investigation into the officer's complaint against her, which included allegations of racial and religious discrimination. Plaintiff has not been apprised of the results.

33.  On July 28, 2019, the Corrections Officer who had made the complaint against her accosted Plaintiff in a rude, hostile and threatening manner, falsely accusing her of having conveyed confidential information to an unauthorized party. Plaintiff did not know what he was referring to.

34.  On July 29, 2019, Plaintiff was placed on administrative leave, and she was terminated on August 22, 2019.

35.  After Plaintiff was terminated, her position as Warden of the Wyoming Warden was filled by a White male.

36.  Defendant has no legitimate business or governmental reason for the actions to which it subjected Plaintiff, including without limitation, hostile work environment discrimination, disciplinary action and termination, which actions were undertaken because of her race and gender, and other protected statuses, and in retaliation for her

having engaged in protected activity as defined by Title VII, the ADEA and the ADA.

37. As a direct and proximate result of Defendant's conduct in violation of Title VII, the ADEA and the ADA, Defendant has suffered damages, including lost pay and benefits; loss of her chosen career and diminishment of her employment opportunities; severe and emotional distress resulting from her denigration on the basis of her race, age, gender, and religion; and as having been false regarded as disabled to the extent that she cannot perform her job opportunities.

WHEREFORE, Plaintiff prays this Court as follows:

1. For declaratory and injunctive relief declaring Defendant's policies and practices to be discriminatory and unlawful and permanently enjoining Defendant and supervisors to whom it delegates immediate and successive supervisory authority over the terms and conditions of the employment of subordinate employees, from continuing to engage in discriminatory practices and from permitting the existence of workplaces under its authority and control to be permeated with discrimination on the basis of an employee's membership in a protected classes to the detriment of its employees, and requiring Defendant to institute meaningful preventive and corrective policies calculated to prevent, investigate and redress injuries to its employees resulting from hostile work environment discrimination and retaliation for engaging in protected activity, and otherwise from violations of their civil rights.

2. For reinstatement and for judgment against Defendant in favor of Plaintiff on her Title VII, ADEA and ADA claims to award her equitable damages for back pay,

10

including raises she would have received but for Defendant's unlawful actions and lost benefits.

3.      For compensatory damages in an amount sufficient to compensate her for her injuries caused by its unlawful actions, and punitive damages as may be available for the injuries to her civil rights.

4.      For Plaintiff's costs and reasonable attorneys' fees incurred herein pursuant to 42 U.S.C. § 1988.

6.      For such other and further relief as this Court may deem to be just and equitable.

## JURY DEMAND

Plaintiff demands a trial to a jury of twelve (12) persons on all issues triable to a jury.

Dated this 12th day of December, 2022.

Mary Elizabeth Galvan
Wyoming State Bar No. 5-1879
Galvan & Fritzen, An Association of Sole Practitioners
410 East Grand Avenue, Suite 211
P. O. Box 1071
Laramie, Wyoming 82073-1071
(307) 745-7091
mgalvan@wyoming.com